1

```
UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

---------------------------------------x
UNITED STATES OF AMERICA,

                    Plaintiff,        Docket No.:
                                       08 CR 823 (NGG)
        versus

BRYANT VINAS,                          U.S. Courthouse
                                       225 Cadman Plaza East
                    Defendant.         Brooklyn, NY 11201
---------------------------------------x
                                       June 15, 2016
                                       11:00 a.m.


    Transcript of Criminal Cause for Status Conference

Before:   HONORABLE NICHOLAS G. GARAUFIS,
                    District Court Judge


                     APPEARANCES

For the Government:        ROBERT L. CAPERS, ESQ.
                           United States Attorney
                           Eastern District of New York
                           271 Cadman Plaza East
                           Brooklyn, New York 11201
                           BY:  MICHAEL CANTY, ESQ.,
                                RICHARD TUCKER, ESQ.,
                                Assistant U.S. Attorneys

For the Defendant:         MICHAEL BACHRACH, ESQ.
                           STEVE ZISSOU, ESQ.

Court Reporter:            MICHELE NARDONE, CSR, RPR, CRR
                           Official Court Reporter
                           Phone:  718-613-2601
                           Fax:  718-613-2631
                           Email:  Mishrpr@aol.com

Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.
```

MICHELE NARDONE, CSR – Official Court Reporter

1      (In open court.)

2      (Defendant present.)

3      THE CLERK:  Criminal cause for a status conference.

4      Counsel, just state your appearances, please.

5      MR. TUCKER:  Rich Tucker and Michael Canty for the
6 United States.  Good morning, your Honor.

7      MR. CANTY:  Good morning, your Honor.

8      MR. ZISSOU:  Steve Zissou and Michael Bachrach for
9 Mr. Vinas.

10      THE COURT:  Good morning, Mr. Vinas.

11      THE DEFENDANT:  Good morning, sir.

12      THE COURT:  All right.  So I recall this case came
13 along in November of 2008, right?

14      MR. TUCKER:  Yes, your Honor.

15      THE COURT:  On a Saturday morning?

16      MR. TUCKER:  I think that's right, your Honor.

17      THE COURT:  So where are we in this long saga?

18      MR. TUCKER:  Your Honor, the parties have conferred,
19 and I think what we would propose to the court is that we take
20 Mr. Vinas' presentence investigation report out of abeyance as
21 a first step toward potentially sentencing him.

22      THE COURT:  Potentially?

23      MR. TUCKER:  Your Honor, the defendant's cooperation
24 is ongoing.

25      THE COURT:  I checked the actuarial tables.  I will

MICHELE NARDONE, CSR – Official Court Reporter

1  die some day.

2             MR. TUCKER:  Hopefully not, your Honor.

3             MR. ZISSOU:  We are hoping not, judge.

4             MR. CANTY:  Not any time soon.

5             THE COURT:  Well, it's inevitable, and I would like to

6  resolve this before my demise, which is never certain.  It's

7  certain, but the date of it is not.

8             So when you say take it out of abeyance, what do we

9  mean by that term?

10            MR. TUCKER:  We want to have the PSR prepared, your

11 Honor, and I think that at the point that the PSR is ready the

12 parties will be in a position where we can say to the court

13 where ready to move forward with sentencing; but the parties at

14 this point are not yet ready for sentencing.

15            But the theory here, to your Honor's point exactly, is

16 to accomplish a necessary step between where we are right now

17 and sentencing.  So what we propose is that we appear before

18 the court again in approximately four months, which is about

19 the time that PSRs are taking these days.  Happy to appear

20 earlier if your Honor wants or later.  At that point I think we

21 will be in a position where we can say, your Honor, we are

22 ready to go forward.

23            I think, as your Honor can also imagine and as your

24 Honor is getting at, given the length of this case, any

25 submission that the government would present to your Honor in

1  preparation for sentencing would be fairly complex and might

2  touch upon certain classified sensitivities.  So that will be

3  another thing that the government is working on between now and

4  when we appear before the court again.

5          THE COURT:  Well, the government has a sense at this

6  point, does it not, as to whether the defendant's cooperation

7  has been completed?

8          MR. TUCKER:  It does, your Honor.

9          THE COURT:  So what is government's position with

10 regard to that?

11         MR. TUCKER:  Well, your Honor, I think the government

12 assesses the defendant's cooperation as not yet complete.

13         THE COURT:  Eight years later?

14         MR. TUCKER:  Yes, your Honor.

15         THE COURT:  Almost eight years.

16         MR. TUCKER:  That's correct, your Honor.

17         THE COURT:  Seven and a half.

18         MR. TUCKER:  Yeah.  I think he pled guilty in January

19 of 2009.

20         THE COURT:  I was there.

21         MR. TUCKER:  I was not, your Honor.

22         THE COURT:  You were in high school.

23         MR. TUCKER:  That's too kind, but I think the

24 government is sensitive to the fact that this case has been

25 going on a long time.  I know the defendant is very sensitive

1    to that fact.
2              THE COURT:  And one of the reasons why Mr. Zissou and
3    I are concerned that we have these meetings is so that the
4    defendant is aware that it is on the court's radar to deal with
5    the last step in the court's consideration, which is the
6    sentencing step.
7              MR. TUCKER:  Absolutely, your Honor.
8              THE COURT:  Do you understand that, Mr. Vinas?
9              THE DEFENDANT:  Yes, sir.
10             MR. TUCKER:  It's on the government's mind as well,
11   your Honor.  We are very mindful of it.
12             THE COURT:  Mr. Zissou.
13             MR. ZISSOU:  Judge, we have had some discussions.
14   Those discussions included Mr. Vinas, and we believe that the
15   government has proposed a reasonable path forward, and which
16   direction it takes, I think, will be a function of both your
17   Honor's approval of that path when we agree to it and the
18   completion of the presentence report.  So the next step is
19   getting that done.  Figure if we are back here three or four
20   months from now it should be, if not done, then at least
21   Probation will have given your Honor an update as to when, and
22   we will be able to tell your Honor which of a number of choices
23   the government has proposed Mr. Vinas would like to pursue.
24             So, but just generally, I think we are satisfied that
25   the government is taking a reasonable position forward.

MICHELE NARDONE, CSR – Official Court Reporter

1    THE COURT:  Well, let me just say this.  The issue of
2 the defendant's sentencing has long been of great concern to
3 the court because of the nature of the crimes to which he
4 pleaded guilty, the overall situation in the country, and the
5 world with regard to international terrorism.  All of this
6 weighs very heavily on this court, as it should, and so what I
7 would like to do is proceed with all deliberate speed to have a
8 package ready for the court to utilize when the time comes that
9 everyone is in agreement that we should have a sentencing here.
10    Whatever the outcome may be of the sentencing, we
11 should have everything in place, and the first major step is to
12 complete the presentence report.  The second major step is for
13 the government and the defense to submit paperwork in support
14 of whatever their positions are on the sentencing and make
15 recommendations on what the sentence ought to be.
16    Let me ask you this:  Is the government going to make
17 a recommendation on this sentence, or am I going to have to put
18 on my -- am I going to have to sort of figure it out for
19 myself, without any help from you?
20    MR. TUCKER:  Your Honor, I definitely don't want to
21 suggest that the government is not going to provide help.  The
22 government's role in this type of sentencing --
23    THE COURT:  You are from the government; you are here
24 to help.
25    MR. TUCKER:  I'm here to help, your Honor.  We are

MICHELE NARDONE, CSR - Official Court Reporter

going to provide the court as fulsome a record as possible, both with respect to the defendant's conduct before he was arrested and the nature of the cooperation he has provided.

In these types of cases, as your Honor knows far better than I, the government typically does not make a specific recommendation with respect to a sentence. I don't anticipate making a specific recommendation here, but I do anticipate, as we typically do with cooperators particularly, complex cooperators like Mr. Vinas, that we will provide the court with a very complete record with respect to all the information that the court would need to make those types of decisions.

THE COURT: Okay. Let me tell you right now -- and I'm not shy about this -- that we have an Attorney General who used to be the U.S. Attorney in this district, and she is very familiar with Mr. Vinas' case; and so I may ask you for a recommendation, if the sentencing happens during her term of office. That there may be some other Attorney General in place when the sentencing takes place, we will deal with that, should that be the timing of the sentencing.

But I think that in a case of this nature it's important for the Justice Department to step up and make a recommendation to a court because you know a lot more, you and law enforcement, the FBI, the CIA, Interpol, Scotland Yard. All the different entities with whom Mr. Vinas may have been

1  providing information are far more conversant with the nature

2  and extent of his assistance than I am.

3              Even if you give me a lot of paperwork, both paperwork

4  that can be shared generally and paperwork which is

5  confidential in nature because of its sensitivity, you still

6  know more.  You meaning collectively know more about this

7  defendant than I do.  You have been working with him over these

8  last almost eight years such that you can provide me with a

9  kind of enlightenment that I'm not going to be able to divine

10 from a submission.  So you may hear from me at the time before

11 sentencing as to your recommendation.

12             I'm sure Mr. Zissou will have a recommendation, but

13 I'm just -- this is a forewarning that the court is going to

14 want to hear from the government in this highly charged world

15 that we live in as to what the government's view is on

16 sentencing.  I will have no trouble sentencing, but I need as

17 much help as possible from the people who know the defendant

18 the best.

19             So that's my message back to the government, and

20 please share that with all the people who go up the ladder,

21 right up to Constitution Avenue in Washington.

22             MR. ZISSOU:  May I make -- ask a question of the

23 court?

24             THE COURT:  Sure.

25             MR. ZISSOU:  Certainly we will follow this up, but

MICHELE NARDONE, CSR – Official Court Reporter

1  does the court think that there is a distinction between a
2  specific recommendation and, for example, the government's
3  position that whatever the defendant recommends is sufficient
4  but not greater than necessary?  In other words, sometimes the
5  attorney for government will say, well, we think that that is
6  sufficient but not greater than necessary.
7           THE COURT:  I know.  Right.  I'm sorry.
8           MR. ZISSOU:  Or is that a distinction without a
9  difference where you are concerned?
10          THE COURT:  I know how to receive messages of that
11 kind.  I have sentenced over 1200 people --
12          MR. ZISSOU:  Sure.
13          THE COURT:  -- during my tenure as a judge.  So they
14 may fashion their response in a way that is helpful to me
15 without saying X number of years or something else.
16          MR. ZISSOU:  Very well.
17          THE COURT:  And we will deal with that at the time,
18 just before sentencing.
19          What I'm trying to do is lay the ground work so that I
20 don't -- we are not sitting here in six months and I ask for
21 the first time what is the government's recommendation and I
22 get an answer of we don't make a recommendation, your Honor.
23          MR. ZISSOU:  Very well.
24          THE COURT:  That would not be satisfactory.  I need
25 guidance, even if I don't take it.

MICHELE NARDONE, CSR - Official Court Reporter

1  MR. ZISSOU: Very well.

2  THE COURT: All right.

3  MR. ZISSOU: Judge, the last thing I wanted to just let your Honor know, insofar as the issues to be resolved, the one thing we raised last time that we have just begun to discuss today or in recent days is the scope of the classified material that be made available to the defense. That issue has not been resolved.

So it is theoretically possible that we might have to come back to the court earlier with some assistance from the court as to how that's going to be -- that issue is going to be resolved; but I do think Mr. Tucker and his unit have been reasonable. I don't anticipate at the moment that we are going to have a problem, but in the event that we do we will let your Honor know.

THE COURT: All right.

MR. TUCKER: Your Honor, I feel, after Mr. Zissou's sentiments, I feel confident we will be able to resolve that issue; and with respect to your Honor's very reasonable request for some guidance from the government, I feel confident that the parties, working together, will be able to find a way to navigate the limitations of the defendant's agreement versus the court's very reasonable request for as much information and guidance as possible, although, of course, the ultimate decision will be your Honor's.

MICHELE NARDONE, CSR - Official Court Reporter

1    THE COURT:  Very well.  So you are going to reach out
2 to the Probation Department and request that this presentence
3 investigation report be given a priority so that we can get
4 started on it immediately and so that I may have a report by
5 the time of our next meeting, and not for the purpose of
6 actually sentencing on that date but so that I have had a
7 chance in this complex situation of reviewing what's there and
8 deciding whether I need a lot more information.  All right.
9    So I'm going to set Thursday, September 15 at
10 11:00 a.m. for a status conference, and hopefully by that time
11 I will have a presentence report.  If I don't have a
12 presentence report, I would like to have the probation officer
13 here to tell me what's left to do.  So there has to be an
14 interview of defendant, there has to be providing of materials
15 to the probation officer, and then the probation officer has to
16 have the time to do some writing and any further investigation
17 that's necessary.  All right.
18    Oh, I didn't ask you, Mr. Vinas:  Are you satisfied
19 with the assistance your attorneys have given you thus far in
20 this matter?
21    THE DEFENDANT:  Not consistently, but lately they have
22 been good to me.  So yeah, recently it's been good, sir.
23    THE COURT:  Well, you let me know.
24    THE DEFENDANT:  Yes, sir.
25    THE COURT:  All right.

MICHELE NARDONE, CSR - Official Court Reporter

1        THE DEFENDANT:  Thank you.

2        THE COURT:  But I would expect them to be very

3   attentive to your situation.

4        THE DEFENDANT:  Thank you, sir.

5        THE COURT:  And they are excellent criminal defense

6   lawyers.  So you should call on them whenever you need them.

7        THE DEFENDANT:  Thanks.

8        THE COURT:  All right.  Okay.  Is there anything else

9   for today?

10       MR. TUCKER:  Not as far as the government is

11  concerned.

12       MR. ZISSOU:  No, your Honor.

13       THE COURT:  Mr. Vinas, is there anything else that you

14  have that you want to discuss with your attorneys to have them

15  discuss it with me before you go?  If there is, you talk to

16  them first and they will talk to me.

17       THE DEFENDANT:  Yes, sir.

18       THE COURT:  I don't want you to tell me anything

19  directly.

20       THE DEFENDANT:  Yes, sir.

21       THE COURT:  All right?

22       THE DEFENDANT:  All right.  Thank you.

23       THE COURT:  If there is some need to have a meeting

24  before September 15, discuss it with your attorneys; and they

25  will let me know, and we will schedule a meeting.

MICHELE NARDONE, CSR – Official Court Reporter

1    THE DEFENDANT:  I understand, sir.

2    THE COURT:  There is no obligation to wait until

3    September 15 in order to have a meeting.  All right.  We can

4    hold the meeting sooner than that, subject to Mr. Zissou's

5    international travel plans.

6    Anything else, Mr. Tucker?

7    MR. TUCKER:  No.  Thank you, your Honor.

8    MR. ZISSOU:  No, your Honor.

9    MR. BACHRACH:  Thank, your Honor.

10   MR. CANTY:  Thank you, judge.

11   THE COURT:  Thank you.  Have a nice day, everybody.

12   (End of proceedings.)

13                        o O o

14

15  Certified to be a true and accurate transcript.
    /s/ Michele Nardone
16  MICHELE NARDONE, CSR, RPR, CRR -- Official Court Reporter

17

18

19

20

21

22

23

24

25

MICHELE NARDONE, CSR – Official Court Reporter