1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2   ------------------------------x
                          08-CR-823(NGG)
3   UNITED STATES OF AMERICA,
                          United States Courthouse
4         Plaintiff,         Brooklyn, New York
5         -against-         April 20, 2017
                          2:00 p.m.
6   BRYANT VINAS,
7         Defendant.
     ------------------------------x
8          TRANSCRIPT OF CRIMINAL CAUSE FOR MOTION HEARING
9        BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
           UNITED STATES SENIOR DISTRICT JUDGE
10
11  APPEARANCES
12  For the Government:      ROBERT L. CAPERS, ESQ.
                       United States Attorney
13                   Eastern District of New York
                       271 Cadman Plaza East
14                   Brooklyn, New York 11201
                       BY:  RICHARD M. TUCKER
15                         DAVID KESSLER
                         SETH DUCHARME
16                   Assistant United States Attorneys
17  For the Defendant:       STEVE ZISSOU & ASSOCIATES
                       42-40 Bell Boulevard, Suite 302
18                   Bayside, New York 11361
                       BY:  STEVE ZISSOU, ESQ.
19
     For the Defendant:       LAW OFFICES OF MICHAEL K. BACHRACH
20                   276 Fifth Avenue, Suite 302
                       New York, New York 10001
21                   BY:  MICHAEL K. BACHRACH, ESQ.
22  Court Reporter:          LINDA D. DANELCZYK, RPR, CSR, OCR
                       Phone:  718-613-2330
23                   Fax:    718-804-2712
                       Email:  LindaDan226@gmail.com
24
     Proceedings recorded by mechanical stenography.  Transcript
25  produced by computer-aided transcription.

PROCEEDINGS

1          (In open court.)

2          THE COURTROOM DEPUTY:  Please be seated.  Criminal

3    cause for motion.

4          Counsel, could you state your appearances, please.

5          MR. TUCKER:  Good afternoon, Your Honor.  Rich

6    Tucker, David Kessler and Seth DuCharme for the government.

7          THE COURT:  Good afternoon.

8          MR. ZISSOU:  Mr. Vinas is represented by Steve

9    Zissou and Michael Bachrach.  We're both present. Mr. Vinas,

10   as the Court knows, has allowed us to waive his appearance.

11   He's agreed not to attend today's proceeding.  However, his

12   father and sister are in the audience just so that their

13   presence is noted on the record.

14         THE COURT:  Thank you very much and welcome.

15         There is a motion to conduct a sealed proceeding

16   here.  Would you speak to that, sir.

17         MR. TUCKER:  Your Honor, yes.  I believe it's the

18   defense's motion because underlying it is their broader

19   request for discussion.

20         THE COURT:  Oh, that's right.  Your motion.

21         MR. ZISSOU:  Judge, we have simply tried to comply

22   with procedures, we think, applicable actually.  Were it up to

23   us, there would be no Classified Information Procedure Act.

24   We are not here to defend it, simply as often the Court do

25   comply with it.  We do think, however, that this discussion

PROCEEDINGS

1   will necessarily involve a discussion of classified

2   information which the public is not privy to, and there are

3   some things we can address prior to doing that, if the Court

4   would like to do so.  My understanding is the procedure is to

5   do as much as Your Honor can in open court, and then when one

6   or both of the parties think now is the time to unpack the

7   request about stuff, we can do that.  I don't know that there

8   is.  I certainly can explain to Your Honor what our concerns

9   are and why we have asked for a private or classified

10  conference with the Court.  I don't think that would divulge

11  any state secrets.

12          THE COURT:  Before you go there, let me hear from

13  the government.

14          MR. TUCKER:  Your Honor, I think we can accomplish

15  some things in open court here today first and I'm happy to do

16  that.

17          THE COURT:  Like what?

18          MR. TUCKER:  I think the defense counsel filed a

19  letter today, this morning.

20          THE COURT:  Oh, yes.

21          MR. ZISSOU:  Judge, you know, there was a footnote.

22          THE COURT:  I read the footnote.  I read all

23  footnotes of your letters as well as the text, but this letter

24  is 11 pages long.

25          MR. ZISSOU:  It's lengthy, Judge.

PROCEEDINGS

1       THE COURT:  And obviously you didn't come up with it

2    at 1:00 in the morning last night, and so I'm just wondering

3    why it is that you shared these pearls of wisdom, you know,

4    with me the morning of a conference.

5       MR. ZISSOU:  Well, so --

6       THE COURT:  Without giving the other side the

7    opportunity to comment in writing, which would be most helpful

8    to the Court.

9       MR. ZISSOU:  And was that not our intention.  But we

10   went back and forth over the last few days trying to decide

11   whether it made more sense to discuss some of these issues

12   during oral argument and then follow it up with briefing, and

13   then I think we made so much progress in terms of developing

14   the issues that, you know, late last night we decided we

15   better just file this thing now and let them see it in the

16   morning.  It was certainly not our intention --

17      THE COURT:  This was filed publicly on ECF.

18      MR. ZISSOU:  It is publicly filed.  We certainly

19   don't and it was not our intention to undermine the

20   government's positions here.  Indeed if they need time to

21   respond or something, we have no objection to that or

22   proceeding on a different day.

23      THE COURT:  Well let me just point out that one of

24   the Court's concerns is that we resolve the sentencing of the

25   defendant with all deliberate speed.

PROCEEDINGS

1          MR. ZISSOU:  Yes.

2          THE COURT:  To borrow a phrase from a very

3   well-known Supreme Court decision.  But what we mean by that

4   is as promptly as possible.

5          MR. ZISSOU:  Of course.

6          THE COURT:  Without dragging our feet.  And I think

7   that the defendant, who's been in jail for nine years --

8          MR. ZISSOU:  Correct.

9          THE COURT:  -- awaiting this day or a day, is

10  interested in achieving that objective.  So I wouldn't want to

11  extend the process any more than is absolutely necessary.

12          MR. ZISSOU:  Of course, Your Honor.  We appreciate

13  that as well.  And certainly as I said it was not -- those are

14  one of those things that happened late at night and we said we

15  better just give this to the Court in the morning and not

16  stand here and go on and on about various legal issues and the

17  Court not having at least a clue of where we were coming from.

18          MR. TUCKER:  Your Honor.

19          MR. ZISSOU:  I beg Your Honor's indulgence.

20          THE COURT:  That's all right.  But I do point out

21  that this arrived on my desk this morning sometime.  Yes.

22          MR. TUCKER:  Your Honor, I'm happy to take my cues

23  from the Court about how much Your Honor wants to do out in

24  open court and back in our closed proceeding.

25          As Your Honor notes, the objective here more broadly

PROCEEDINGS

1    is to move these proceedings forward.  Obviously the

2    government's preference earlier on was to not and now we've

3    proceeded diligently and worked hard to get submissions to the

4    Court.

5              THE COURT:  I'm sorry, earlier on your preference

6    was not to move it?

7              MR. TUCKER:  That's correct, Your Honor.  As was

8    stated I think when we appeared before Your Honor earlier this

9    fall, we talked about the fact that the defendant --

10             THE COURT:  You mean last fall.

11             MR. TUCKER:  Yes, Your Honor, I apologize, 2016.  We

12   talked about the possibility that the defendant's cooperation

13   could be ongoing, and we discussed the possibility of

14   postponing sentencing.  And now our understanding, and I want

15   to be correct if I'm mistaken on this point, was that the

16   defendant and his counsel wanted to move forward.  So that's

17   the framework that we're operating under.

18             THE COURT:  Is that a fair assessment --

19             MR. ZISSOU:  It is, Your Honor.

20             THE COURT:  -- of your position and your client's

21   position?

22             MR. ZISSOU:  It is, Your Honor, however, he has been

23   mindful of his obligation to continue to cooperate.  He will

24   be anywhere at any place at any time the government directs.

25   So he's not giving up on Mr. Tucker and the government gave

1  him the option of waiting or proceeding to sentence, he chose

2  the option to proceed to sentence for all the reasons Your

3  Honor outlined earlier today, and that remains his position

4  today.

5           MR. TUCKER:  So, Your Honor, with that framework in

6  mind, I'm happy to respond to the defendant's letter of this

7  morning.

8           THE COURT:  Well, why don't we do that so that

9  assuming that it can be responded to without divulging any

10  state secrets or other confidential information that would put

11  the security of the United States at risk.

12           MR. TUCKER:  I think that it can, Your Honor.  And I

13  should caveat it by saying that obviously I've had this letter

14  for a few hours.  So we have not had the opportunity to

15  conduct the research that we might otherwise conduct.

16           THE COURT:  You mean on the law?

17           MR. TUCKER:  On the law, Judge.  But if Your Honor

18  has questions, I hope we'll have the opportunity to address

19  those.

20           THE COURT:  Well, I don't know that we haven't

21  delved into the law on this put forward here, but the basic

22  information I think is straightforward.

23           MR. TUCKER:  I think that's right, Your Honor.

24           The point that I would make is this --

25           THE COURT:  And whether it applies to this case is

PROCEEDINGS

1  really something that could be debated.

2          MR. TUCKER:  I think that's exactly correct.

3          THE COURT:  Because this is a post-plea situation

4  where the only matter to be resolved is the sentence, so.

5          MR. TUCKER:  Your Honor, I think that's exactly

6  right.  I think it is a pretty radical extension of Brady to

7  suggest that Brady and its progeny placed some kind of burden

8  on the government to provide defense counsel with information

9  about a defendant's cooperation not relating to his

10  culpability but relating to the consequences of that

11  cooperation.  I don't think that the law is there.  And

12  obviously I only had a few hours to read the letter.  What

13  strikes me about it is I don't think Mr. Bachrach could find

14  any authority to support that.  He cites to Brady and that's

15  it.  I think it's important that we have this discussion about

16  what the party's obligations are.

17          THE COURT:  Well, we can break new ground, which is

18  I'm sure your objective here.

19          MR. TUCKER:  Always, Your Honor.  But anyway, I

20  think the framework that we're talking about really, Judge, is

21  our cooperation agreement and whether the government has

22  abided by the terms of that agreement.

23          We have made our application under 5K, and we have

24  provided the Court and defense counsel with detailed facts to

25  support our motion to describe the defendant's substantial

PROCEEDINGS

1  assistance.  We've met our obligations under the cooperation

2  agreement and under due process.  I don't think the law

3  supports the idea that we should be required to answer

4  interrogatories from defense counsel about attenuated outcomes

5  that may or may not have occurred.  We submitted a detailed

6  package to Your Honor and the defense and that meets our

7  obligations.

8          I'm happy to address specific questions, Your Honor,

9  but that's the government's sort of core concept here, is that

10  Brady doesn't move the needle in the broader legal analysis.

11          MR. ZISSOU:  So, Judge, let me, if I might, sort

12  of -- if Your Honor is prepared to hear me again.

13          THE COURT:  Of course.

14          MR. ZISSOU:  So I think certainly what Mr. Tucker

15  says is well taken, although he is sort of one off of the

16  Brady decision, the Supreme Court decision that applies the

17  constitution in more than just pretrial proceedings, it

18  continues to apply it by the government.  So I'm a little

19  concerned about Mr. Tucker's minimization, if you will.

20          But here's what really creates the problem for us.

21  And I'm only referring now to what Mr. Tucker referred to,

22  which is the unclassified 5K letter and the other unclassified

23  materials that were submitted to you.

24          Given what we know about the last decade and what is

25  I think a well-known fact that al-Qaeda's operational

PROCEEDINGS

1  capability has been severely diminished over the last ten

2  years, given what is in the classified material alone, one

3  could draw the inference --

4           THE COURT:  You mean the declassified material.

5           MR. ZISSOU:  I'm sorry, the unclassified, the 5K

6  letter alone, one can draw the inference that Mr. Vinas was

7  the proximate cause of that diminished operational capability.

8  And when I say that, I in no way mean to diminish our military

9  and the actions of the Executive Branch all way down to

10 Mr. DuCharme's unit here in the Eastern District of New York

11 and all of the people who work hard to make sure that American

12 citizens and people all over the world are safe.  But one

13 could draw the inference that but for Mr. Vinas' cooperation

14 with the government, al-Qaeda is still a highly-functioning

15 machine capable of doing the kinds of things that they did

16 more than a decade ago in the United States.  And that's not

17 something Your Honor should have to infer.  Your Honor should

18 know that if that's -- if that's really what we say happened

19 here, because that's the way it looks to us.

20          Again, I won't go into our follow-up submissions to

21 the Court and how it relates --

22          THE COURT:  But that statement would refer to

23 conclusions that could be reached as opposed to facts that

24 could be discerned about specific assistance that your client

25 gave to law enforcement, for instance.

PROCEEDINGS

1        MR. ZISSOU:  Well --

2        THE COURT:  Right?  I mean you don't -- I mean what

3   your client specifically did or said or advised is something

4   that you have access to from your client, correct?

5        MR. ZISSOU:  Correct.

6        THE COURT:  The consequences of that are something

7   that one could discern from the current status of terrorist

8   organizations in the Pakistan and Afghanistan area.

9        MR. ZISSOU:  Yes, that's certainly true but, again,

10  I just want to -- just --

11       THE COURT:  I'm just trying to understand what it is

12  you think you need that you don't already have.

13       MR. ZISSOU:  Well, just a way of pointing out, what

14  the client says or a lot of what the client says to us is

15  presumptively classified as well.  So I'm not referring to any

16  of that now.  In other words, I'm not free to discuss what the

17  client says to me that is reasonably something that --

18       THE COURT:  In other words, you couldn't argue based

19  upon some of that material which is not subject to --

20       MR. ZISSOU:  Right.

21       THE COURT:  -- confidentiality.

22       MR. ZISSOU:  I certainly won't, but it's also

23  presumptively classified as well.  So I'm not referring to

24  that right now in substance.  What I'm simply saying is you

25  need to know, look, whatever the law may be, what we know is

PROCEEDINGS

1    3661 of Title 18 makes it clear that there's no limitation on

2    what a judge may consider in determining a sentence.

3            THE COURT:  Well, I have material that's been

4    redacted.

5            MR. ZISSOU:  You do.

6            THE COURT:  For your purposes.

7            MR. ZISSOU:  You do, and if Your Honor is --

8            THE COURT:  I do know how to read.

9            MR. ZISSOU:  If Your Honor's prepared to embrace my

10   suggestion that an inference be drawn that his cooperation was

11   the proximate cause of the diminished capability of al-Qaeda

12   over the last decade, then we're good to go.

13           MR. TUCKER:  Your Honor, I don't want --

14           THE COURT:  I know what you said but I'm not

15   understanding the jump that you propose.

16           Go ahead.

17           MR. TUCKER:  And, Your Honor, I think that's exactly

18   right.  I'd like to stay focused on what we're talking about.

19           THE COURT:  That would be helpful.

20           MR. TUCKER:  Defense counsel has been provided with

21   an enormous amount of information, nearly everything that the

22   Court was provided with.

23           THE COURT:  I think that that's true.

24           MR. TUCKER:  If the argument here is that the

25   government hasn't met its burden under the cooperation

PROCEEDINGS

1   agreement and has not accurately described for the Court the

2   substantial assistance provided, that's one thing.  But I

3   don't think that's what defense counsel's arguing.  What we're

4   really talking about is defense counsel wants everything the

5   Court got, and as we've explained, a handful of particular

6   pieces of information were deemed so sensitive by the relevant

7   stakeholders that only Your Honor could be provided with that

8   information.

9        I also would note that those extremely limited

10  portions, as we indicated, were positive about the defendant.

11  We wrote a footnote in the classified letter that says that

12  the redacted portions are positive about the defendant and

13  that reasonable inferences could be drawn.  I think Mr. Zissou

14  can make whatever argument he wants about the impact of the

15  defendant's cooperation, as Mr. Zissou and Mr. Bachrach wrote

16  in our letter -- in their letter.  In our letter, our

17  unclassified publicly-filed letter, we indicated that

18  Mr. Vinas was an exceptional cooperator, among the most

19  important in the government's work against al-Qaeda.

20       The defense is well positioned to advocate on behalf

21  of their client.  And respectfully, Your Honor, Your Honor is

22  able to review these materials without defense counsel needing

23  to see everything and comment on it. Your Honor's a

24  sophisticated consumer of this information.  Your Honor has

25  the complete picture.  Your Honor's in a good position to make

PROCEEDINGS

1    those determinations.  So we're talking again about a very

2    narrow dispute, and it's the government's position that we

3    have met our obligations and that no further disclosures are

4    required.

5             MR. ZISSOU:  Well, it's not a narrow dispute.  We

6    also submitted to the Court a CIPA document that requested

7    answers to certain questions, and that's really what drives

8    this proceeding today.

9             And I certainly understand that Mr. Tucker wants to

10   make the cooperation a living document, certainly Mr. Vinas is

11   bound by its terms, however, the Court is not.  The Court is

12   not limited to what the government promised Mr. Vinas they

13   would say and do.  The Court, there is no limitations, and

14   what I submit to you, Judge, is you -- certainly I think, we

15   think we're entitled to see it, too, but more than anything we

16   think you should see it because you're the one who's imposing

17   sentence here, and as a result you're the most important in

18   the world.

19            So it's not enough that I think that a reasonable

20   inference could be drawn that Mr. Vinas is the proximate cause

21   of al-Qaeda's destruction, if you will, over the last ten

22   years, but it's more important that Your Honor understand the

23   essential role that he played.  Because if that's true, and it

24   appears to be true simply from the unclassified material, that

25   he didn't just provide substantial assistance to the

PROCEEDINGS

1  government, he saved lives.  And lots of them.  Countless,

2  nameless, faceless victims of the same kind that

3  Mr. DuCharme's unit tries to save every day.  Preventing

4  people who are future victims but never get to because of the

5  work they do.

6         And if that's the role that he played, we shouldn't

7  be talking in terms of he was a very important cooperator, it

8  should be unequivocal to you that this is the most unique

9  individual who's ever cooperated, well, presumably since World

10  War II.  I imagine then lives were -- people did things that

11  saved lots of lives.  But this young man saved countless lives

12  of people who will never know that they were about to be

13  victims.  And if that's the case, then I submit to you that 5K

14  letter, as far as it is, as helpful as it is, is not as good

15  as it should be.  It doesn't give this Court what it needs.

16  Respectfully, Judge.

17         THE COURT:  Is there anything else that can be

18  discussed in public before I rule on the sealing of the

19  proceeding?  Is there something else that we need to talk

20  about?

21         MR. ZISSOU:  No, Your Honor.

22         THE COURT:  That's it?

23         MR. ZISSOU:  I think that's it, Your Honor.

24         THE COURT:  Anything from the government?

25         MR. TUCKER:  No, Your Honor, thank you.

PROCEEDINGS

1      THE COURT:  All right.  Okay.  Is there anyone else

2 who would like to speak before I rule on the application?

3      Mr. Riley, please.  John Riley from Newsday.  Yes,

4 sir, please.

5      MR. RILEY:  Judge, I sent up a letter to your

6 chambers in the mailbox a few hours ago and I provided a copy

7 to the two attorneys.  Did you receive it?

8      MR. ZISSOU:  I'm handing it up.

9      THE COURT:  I have not, but I will read it now, if

10 you don't mind.

11      MR. ZISSOU:  There are two letters that I've handed

12 up to him.

13      THE COURT:  Two letters?

14      MR. RILEY:  The second --

15      THE COURT:  I see.

16      MR. RILEY:  One relates to the disclosure and the

17 another one relates to another sealed item.

18      THE COURT:  I'll hold off on the sealed letter and

19 just discuss the closure of the courtroom letter right now.

20 That's what relevant to this discussion.

21      MR. RILEY:  Yes.

22      THE COURT:  Thank you very much.

23      The letter's dated April 20th.  Everyone's writing

24 letters to me on April 20th.

25      MR. ZISSOU:  Your Honor, the government has been

PROCEEDINGS

1   kind enough to give their copy to your clerks.

2           THE COURT:  Thank you.

3           (Pause.)

4           THE COURT:  All right, this letter I'm going to mark

5   as Court's Exhibit 1.

6           Any comment from the government about the letter?

7           (Court Exhibit 1, was received in evidence.)

8           MR. TUCKER:  No, Your Honor.  Based on defense

9   counsel's proffer of need for the conference, the government

10  believes that closing the courtroom and proceeding in a sealed

11  proceeding is necessary to avoid the inadvertent disclosure of

12  classified information.

13          THE COURT:  Okay, thank you.

14          Notwithstanding the objection set forth in

15  Mr. Riley's letter, the Court believes that it is necessary to

16  conduct a sealed, classified status conference and concluding

17  that conducting such a conference appropriately, quote,

18  balances competing considerations against, end quote, any

19  public right of access and is, quote, essential to preserve

20  higher values, end quote, as discussed in Lugosch,

21  L-U-G-O-S-C-H, v Pyramid Company of Onandaga, 435 F.3d 110 at

22  120, Second Circuit 2006, and United States v Aref, A-R-E-F,

23  533 F.3d, 72 at 82, Second Circuit 2008, such bases would

24  include avoiding the inadvertent disclosure of classified

25  information to parties without the requisite security

PROCEEDINGS

1 clearances and protecting the national security of the United

2 States.

3           The Court has reviewed the redacted materials and

4 believes that such materials are covered under the bases that

5 I've identified as they are significant and sensitive

6 materials that affect national security.  So the application

7 is granted.

8           And that means that if there's nothing else for the

9 public, we'll proceed to a sealed proceeding.

10           MR. ZISSOU:  Very well, Your Honor.

11           THE COURT:  Which will be conducted in another

12 location.

13           (Recess was taken.)

14           (Continued on next page.)

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS

1      THE COURT:  All right, on the record in open court.

2      The Court would like to set a new sentencing date

3  for the defendant, and let me ask the parties how long you

4  think it will take to complete the submission of the

5  sentencing memoranda that have -- or additional sentencing

6  memoranda in this case?

7      MR. TUCKER:  Your Honor, from the government's

8  perspective the government is done.  The only possibility is

9  we would want to reply to defense counsel.  I don't anticipate

10  that.  But we could file a reply within a few days, if any.

11  It's really up to defense counsel.

12      THE COURT:  Well, what I know now is that defense

13  counsel can work all night and provide us with papers at 8 in

14  the morning, so.

15      MR. BACHRACH:  Your Honor, I had no choice but to

16  work all night, Your Honor.  It's been a busy week.

17      THE COURT:  Okay.  So how much time do you think you

18  need?

19      MR. BACHRACH:  To also have an opportunity to get

20  those additional transcripts, would three weeks be acceptable?

21  I think that would be to May 11th.

22      THE COURT:  All right, let me look.

23      (Pause.)

24      THE COURT:  May 11th at 2 p.m.

25      MR. BACHRACH:  For the defense submission?

PROCEEDINGS

1    THE COURT:  Oh, for the submission?  Do you need

2  that much time?

3    MR. BACHRACH:  The only reason I'm asking for so

4  much time, Your Honor, is I'm currently in the middle of an

5  authorized capital case in the District of New Jersey and

6  we're preparing for an Atkins hearing, and I know Your Honor

7  and anyone knows the difficulty of an Atkins hearing, there's

8  a lot that's going on with that briefing.

9    THE COURT:  Have you read the Moore decision?

10    MR. BACHRACH:  I have, Your Honor, and I'm quite

11  pleased by it.

12    THE COURT:  All right.

13    MR. BACHRACH:  We would also give the court reporter

14  sufficient time as well as the stakeholders sufficient time as

15  well, Your Honor.

16    THE COURT:  When is your Atkins hearing?

17    MR. BACHRACH:  The Atkins hearing is June 6th.

18    THE COURT:  Have you already made a submission?

19    MR. BACHRACH:  Our reports, simultaneous exchange

20  expert reports is due --

21    THE COURT:  No, no, no, I mean in this case.

22    MR. BACHRACH:  A sentencing submission?  No.

23    THE COURT:  I really need to conduct this sentencing

24  in May.

25    MR. BACHRACH:  I can endeavor to get --

PROCEEDINGS

1    THE COURT:  How about Friday, May 5th for your

2    submission?

3    MR. BACHRACH:  That will be fine.  We'll make it

4    happen, Your Honor.

5    THE COURT:  Thank you.  And then --

6    MR. ZISSOU:  Judge, when you're looking at the

7    calendar, let me just point out by the grace of God our son is

8    graduating on May 20th in California, so we should be out

9    there probably from the 17th to the 25th maybe.

10    THE COURT:  Well, and the government's response by?

11    MR. TUCKER:  Your Honor, if their papers are due on

12    5th, we'll file anything by the 8th.

13    THE COURT:  All right, the 8th --

14    MR. TUCKER:  The morning of the 8th.  But again I

15    don't anticipate us filing anything, Judge.

16    THE COURT:  All right, that's fine.  The 8th for the

17    government to file a response, and the 11th of May at 2 p.m.

18    for sentencing.

19    MR. TUCKER:  That works for the government, Your

20    Honor.

21    THE COURT:  That's a Thursday.

22    MR. TUCKER:  Yes, Your Honor.

23    THE COURT:  All right.

24    MR. BACHRACH:  It works for the defense, Your Honor.

25    THE COURT:  All right, so that's the schedule.

PROCEEDINGS

1          Anything else from the government for today?

2          MR. TUCKER:  No, Your Honor.  Thank you.

3          MR. ZISSOU:  No, Your Honor.  Thank you.

4          THE COURT:  Okay, thank you everyone.  Have a nice

5   day.

6          MR. BACHRACH:  Thank you, Your Honor.

7

8          (Whereupon, the matter was concluded.)

9

10                    *     *     *     *     *

11

12

13  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

14

15          /s/ Linda D. Danelczyk          April 20, 2017

16          LINDA D. DANELCZYK               DATE

17

18

19

20

21

22

23

24

25