*1*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,    :   08-CR-0823(NGG)
                             :
                             :
                             :
        -against-            :   United States Courthouse
                             :   Brooklyn, New York
                             :
                             :
                             :
BRYANT NEAL VINUS,           :   Thursday, May 11, 2017
                             :   2:00 p.m.
        Defendant.           :
                             :
                             :
                             :
- - - - - - - - - - - - - - -X

TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
UNITED STATES SENIOR DISTRICT JUDGE

A P P E A R A N C E S:

For the Government:     BRIDGET M. ROHDE, ESQ.
                        United States Attorney
                        Eastern District of New York          271
                        Cadman Plaza East
                           Brooklyn, New York 11201
                        BY: RICHARD TUCKER, ESQ.
                            DAVID KESSLER, ESQ.
                            Assistant United States Attorneys

For the Defendant:      STEVE ZISSOU & ASSOCIATES
                        Attorneys for the Defendant -
                        Bryant Neal Vinus
                           42-40 Bell Boulevard
                           Suite 302
                           Bayside, New York 11361
                        BY: STEVE ZISSOU, ESQ.
                            KARLA COMMISSO, ESQ.

2

                    A P P E A R A N C E S: (Continued.)

                         MICHAEL K. BACHRACH, ESQ.
                         Attorneys for the Defendant -
                         Bryant Neal Vinus
                           276 Fifth Avenue
                           Suite 501
                           New York, New York 10001
                         BY: MICHAEL K. BACHRACH, ESQ.

                    A L S O   P R E S E N T:

   S.A. Ed Pannetta

   S.A. Farbad Azad

   S.A. Erika Day



Court Reporter:  Anthony D. Frisolone, FAPR, RDR, CRR, CRI
                 Official Court Reporter
                 Telephone: (718) 613-2487
                 Facsimile: (718) 613-2694
                 E-mail:  Anthony_Frisolone@nyed.uscourts.gov


Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

*3*

1          (In open court.)

2          (Defendant present in open court.)

3          COURTROOM DEPUTY:  All rise.  The United States

4   District Court for the Eastern District of New York is now in

5   session.  The Honorable Nicholas G. Garaufis is now presiding.

6          (Honorable Nicholas G. Garaufis takes the bench.)

7          COURTROOM DEPUTY:  Calling criminal cause for

8   sentencing in Docket No. 08-CR-0823, *United States of America*

9   *against Bryant Neal Vinus*.

10         Counsel, please note your appearances for the

11  record.

12         MR. TUCKER:  For the United States of America,

13  Assistant United States Attorney Richard Tucker and David

14  Kessler.

15         Good afternoon, your Honor.

16         MR. ZISSOU: Steve Zissou, Michael Bachrach, and

17  Carla Commisso for Bryant Neal Vinas.

18         Good afternoon, your Honor.

19         THE COURT:  You may be seated in the galleries.

20         United States v. Versus Bryant Vinas.  Appearances

21  please.

22         MR. TUCKER:  Rich Tucker and David Kessler.  Sitting

23  at counsel table with me at Ed Pannetta, Farbad Azad and Erica

24  Day.

25         Mr. Vinas is entering the courtroom with the

*4*

1    Marshals Service.

2         (Defendant enters the courtroom at 2:20 p.m.)

3         MR. ZISSOU:  Steve Zissou, Michael Bachrach, and my

4    associate Carla Commisso who has been working with us.

5         THE COURT:  Please be seated everyone.  The

6    defendant is present.  All right.

7         This is a sentencing for Bryant Neal Vinas.

8         Mr. Vinas, are you satisfied with the assistance

9    that your attorneys have given you thus far in this matter?

10        THE DEFENDANT:  Was a little shaky, but it's good

11   right now, sir.  It's good, sir.

12        THE COURT:  It's okay.

13        THE DEFENDANT:  Yes, your Honor.

14        THE COURT:  Is there any reason why we should not

15   ^ proceeded to ^ proceed today?

16        THE DEFENDANT:  No, sir.

17        THE COURT:  Okay.  Thank you.  All right.

18        Mr. Tucker.

19        MR. TUCKER:  Yes, your Honor.

20        THE COURT:  Are there any victims present who wish

21   to speak before I proceed with the rest of the sentencing

22   proceeding?

23        MR. TUCKER:  Not to my knowledge, your Honor.

24        THE COURT:  Okay.  Thank you.

25        Is there any victim who is present who would like to

*5*

1    say anything?

2            Okay.  Thank you.

3            The first order of business is to identify for the

4    record the items in Mr. Vinas's sentencing file?

5            There is a presentence investigation report prepared

6    on October 14, 2016.  There are the defendant's military

7    records, which I've also reviewed.  There's a February 3,

8    2017, letter from the Government and accompanying exhibits.  I

9    think there are 65 of them under seal.  An ex parte letter

10   from the Government dated February 3, 2017, under seal.

11   Classified letter from the Government dated February 3, 2017.

12   There are redactions and a copy that's been provided to

13   defense counsel.  The letter is not on the public docket.

14   There's a March 23, 2017, letter from defense counsel to the

15   Government responding to the Government's letter dated

16   February 3, 2017, which is not on the public docket and

17   presumptively classified.  There's a classified letter dated

18   April 3, 2017, from the Government to defense counsel

19   responding to defense counsel's letter dated March 23, 2017,

20   the letter is not on the public docket.  There is an April 20,

21   2017, letter from defense counsel outlining the relevant

22   issues for a classified status conference.  There's

23   defendant's sentencing memorandum dated May 5, 2017, that is

24   sealed and I'm requesting that the defense provide a redacted

25   copy which will be placed on the public docket.

6

1          Have I missed anything?

2          MR. TUCKER:  No, your Honor.

3          MR. ZISSOU:  No, your Honor.

4          THE COURT:  Okay.  Thank you.

5          Now, on January 28, 2009, pursuant to a cooperation

6     agreement, the defendant waived indictment and entered a

7     guilty plea to a three-count superseding information that

8     charged him with Count One, conspiracy to murder

9     U.S. nationals in violation of 18, United States Code,

10    Section 2332(b).

11         In Count Two, providing material support to a

12    foreign terrorist organization in violation of 18, United

13    States Code, Section 2339(b)(a) (1).

14         And in Count Three, receiving military type training

15    from a foreign terrorist organization in violation of 18,

16    United States Code, Section 2339(d)(a).

17         The statutory maximum term of imprisonment for Count

18    Two is life in prison.  For Count Two two, the statutory

19    maximum is 15 years in prison.  And for Count Three, the

20    statutory maximum is ten years in prison.

21         The maximum term of supervised release for each

22    count is life.  Pursuant to 18, United States Code,

23    Section 3583(j), and that's pursuant to that section.

24         The offenses that qualify as terrorism predicate are

25    listed in 18, United States Code, Section 2332(b)(g)(5(b).

7

1  These qualifying offenses include the crimes to which

2  Mr. Vinas has entered a guilty plea.

3        The presentence report properly lists the maximum

4  term of supervised release as life, but I note, however, that

5  Mr. Vinas's cooperation agreement is incorrect as to the

6  maximum term of supervision.

7        Do the parties have any objection to the Court's

8  conclusion that the maximum term of supervision is life?

9        MR. TUCKER:  No, your Honor.

10       MR. ZISSOU:  No, your Honor.

11       THE COURT:  Okay.  The maximum fine allowable is

12 $250,000 on each count.  A special assessment of $300 that is

13 $100 on each count is mandatory.  At this time, we should go

14 over the computation of the defendant's guideline range.

15       The defendant's base offense level is a 33.

16 Defendant's offense is a felony that involved, or was intended

17 to promote, a federal crime of terrorism.  Therefore, the

18 defendant's base offense level is increased by 12 levels

19 pursuant to Section 3A1.4A.  Guidelines.  This makes

20 defendant's adjusted offense level a 45.

21       The Court finds that the defendant is eligible for a

22 three-level reduction for acceptance of responsibility under

23 Section 3A1.1 of the guidelines because defendant entered a

24 prompt guilty plea accepting responsibility.  Defendant's

25 Total Offense Level is, therefore, a 42.

8

1          Does everyone agree with the computation of the

2     offense level?

3          MR. TUCKER:  Yes, your Honor.

4          MR. ZISSOU:  We do, your Honor.

5          THE COURT:  Thank you.

6          The defendant has no prior criminal convictions, but

7     because the instant offense involved was intended to promote a

8     federal crime of terrorism defendant is automatically placed

9     in Criminal History Category VI as pursuant Section 3A1.4 of

10    the guidelines.

11         Defendant's guidelines imprisonment range is

12    therefore 360 months to life.  Does everyone agree with the

13    computation the Court has just made and which is included in

14    the presentence report.

15         MR. TUCKER:  Yes, your Honor.

16         MR. ZISSOU:  Yes, your Honor.

17         THE COURT:  The Court finds that that is the correct

18    computation of the guideline range which is 360 months to

19    life.

20         Are there any objections to the presentence report

21    in general?

22         MR. TUCKER:  No, your Honor.

23         MR. ZISSOU:  No, your Honor.

24         THE COURT:  Okay.  The parties, having no objection,

25    I adopt the PSR including the guidelines calculation.

1          The next step is to discuss the defendant's

2     substantial assistance.

3          The Government has made a motion pursuant to

4     Section 5K1.1 of the guidelines to allow the court in its

5     discretion to depart if deadlines and impose a lower sentence

6     based on the stance assistance.  Defendant has provided to

7     both the U.S. and foreign authorities.

8          I have read the Government's 5K1 and defendant's

9     sentencing submission, but I would like to make a record here.

10    I would like to hear from the parties on whether, and to what

11    extent, a departure from the guidelines range is appropriate

12    based on defendant's substantial assistance.

13         The parties may also address the relevant factors

14    under 18, United States Code, section §3553(a) in order to

15    impose a sentence that is sufficient, but not greater than

16    that necessary, to fulfill the purposes of sentencing.

17         Mr. Tucker.

18         MR. TUCKER:  Thank you, your Honor.

19         So, your Honor, I note that --

20         THE COURT:  Why don't you come up here and speak at

21    the microphone.  Thank you.

22         MR. TUCKER:  I know the Court has carefully studied

23    the Government's submissions in this matter, and I want to

24    make clear that those submissions sets forth the Government's

25    position with respect to sentencing, but what I hope to do

1   today is to assist the Court and the parties in best

2   understanding the Government's views on this very difficult

3   and important case.

4           As your Honor noted a moment ago this sentencing,

5   like all sentencings, is governed by Section 3553.  We

6   discussed all those factors in our papers, but one factor that

7   weighs particularly heavily here are the nature and

8   circumstances and seriousness of Mr. Vinas's conduct.

9           The defendant left Long Island with a desire to

10  travel overseas and to fight and kill American service

11  personnel.  Once in Pakistan and Afghanistan, he relentlessly

12  sought out and successfully joined al-Qaeda on whose behalf he

13  launched rocket attacks and participated in attempted rocket

14  attacks on U.S. personnel and plotted terrorist attacks on the

15  homeland.

16          But for the defendant's cooperation here and the

17  Government's 5K1.1 motion, the defendant would face a

18  mandatory minimum of ten years, and a guidelines range of

19  360 months to life.  But the defendant did cooperate, and as

20  we've set forth in his submission his cooperation and his

21  assistance was very substantial.

22          Now, there have been multiple characterizations of

23  the import of the defendant's cooperation.  I would

24  respectfully direct the Court's attention to the Government's

25  characterizations of that substantial assistance because the

1   Government is in best position to guide the Court in assessing

2   the value and impact of what the defendant has done.

3            And as we said in our papers, Judge, Mr. Vinas may

4   have been the single most valuable cooperating witness

5   available to the Government and law enforcement with respect

6   to al-Qaeda for the period that he was in Afghanistan and

7   Pakistan which is remarkable.

8            He has been interviewed more than 100 times.  He's

9   been shown more than 1,000 photographs.  He has provided

10  unparalleled insight into external and internal operations of

11  al-Qaeda during the time before his arrest.  This information

12  has been valuable to the U.S. Government and to our foreign

13  partners.

14           In addition, Judge, Mr. Vinas has contributed to the

15  opening and closing of more than 30 criminal investigations,

16  and among these was the successful prosecution of Adis

17  Medujanin in this courthouse where he was convicted of

18  conspiring to launch coordinated attacks against the New York

19  City subway system on behalf of al-Qaeda.

20           And as your Honor knows, Mr. Vinas testified during

21  that trial, and that testimony provided critical context and

22  background about al-Qaeda including how Westerners could go

23  about joining that terrorist organization.

24           Put simply, Judge, Mr. Vinas's assistance was

25  extremely substantial.  And it may support a term of

*12*

1  incarceration that, although significant, falls below the

2  guidelines range of 360 months to life.

3          And so, your Honor, to address the Court's question,

4  I come to what I think is among the most challenging and

5  important factors here which is assessing the defendant's

6  future dangerousness.  Because as we think about the framework

7  that the Court has to operate under here, that's certainly a

8  critical factor in thinking forward about what's necessary,

9  but not greater than necessary, to protect the public.

10         The defendant has been in jail for more than eight

11  years and his path forward, at least to the Government, is

12  unclear.  And as time has passed, as we noted in our letter,

13  he has become increasingly withdrawn and uncommunicative with

14  the Government.  And that's of great concern, frankly, your

15  Honor, and I'm sure it is to the Court as well.

16         As a result of this, the Government has very little

17  information about whether the defendant is likely to pose a

18  continuing danger.  The Government's hope for Mr. Vinas is

19  that whenever he's released from prison, he will choose to

20  lead a law-abiding life.  And to that end, we've requested

21  that your Honor impose a substantial term of supervised

22  release at the conclusion of whatever prison sentence your

23  Honor orders as well as conditions including mental health

24  treatment and continuing education and vocational treatment.

25         And, your Honor, I just want to say the Government

1    and the FBI agents who are here today before your Honor who

2    have worked with Mr. Vinas since the outset have pledged to

3    him and committed to continue to work with him and support him

4    so that hopefully he can find the right path going forward.

5           And if your Honor has questions, I'm happy to

6    address any specific issues that the Court may have but with

7    that the Government would rest on its papers.

8           THE COURT:  Mr. Zissou.

9           MR. ZISSOU:  I think we addressed a number of these

10   things at our last proceeding.  And so, to the extent I will

11   repeat them I will try to be brief about it and I certainly

12   have no intention of going on for too long.

13          Mr. Tucker is right.  Mr. Vinas, who was 24 years

14   old, left the United States, left his homeland.  Left his

15   country.  Went to Lahore and other areas of the world not

16   friendly to the United States.

17          And he is correct, he relentlessly tried to join an

18   organization that sought to destroy our way of life.  And when

19   he was caught, he relentlessly tried to undo the damage that

20   he had wrought.

21          He's relentlessly cooperated with the United States.

22   He's relentlessly cooperated with the Government.  And a young

23   man who al-Qaeda thought would prove to be an aid, a

24   supporter, somebody who helped them destroy our way of life

25   instead became an instrument perhaps even the instrument of

*14*

1    their destruction.

2            There is no question about that anymore.

3            He came forward and showed the same relentlessness

4    that he did in supporting his country.  He came back to the

5    U.S.  He demonstrated in doing so that whatever thoughts were

6    running around in his head.  Whatever heart he felt at the

7    time, his heart was American.  And that the blood that coursed

8    through his veins, that pulsed through his heart was red,

9    white, and blue.  And he's done that are for the better part

10   of ten years.

11           Now, the Government is certainly in the best

12   position to know, obviously, we've said.  But in large part

13   that's because in large part a lot of the really important

14   information is still classified.  Your Honor has some of it,

15   but they control the source of information.  But what we have

16   seen alone makes it clear that without this young man, this

17   country would have faced even greater threats over the last

18   ten years since he has been cooperating.

19           Mr. Tucker mentioned this in his 5K letter about

20   concerns about future dangerousness, of course, that's on the

21   Court's mind and I'm sure the Court will fashion a sentence

22   that addresses that with concerns about supervised release and

23   conditions of supervised release.  You can certainly impose

24   conditions that will satisfy any concern that your Honor might

25   have.

1          But let's think a little bit about how he comes here

2    today.  How he becomes less willing, less cooperative with the

3    United States Attorney's Office over the years.

4          It's almost ten years in a secure facility.  Ten

5    years of not maturing.  Ten years of understanding that the

6    case would be over next year, next year, next year.  And year

7    after year that just didn't happen until your Honor decided it

8    was time to move this case along.  And if your Honor recalls

9    at the time that your Honor made that decision.  Another

10   assistant stood in Mr. Tucker's position and tried to continue

11   this case even longer.

12         Instead, Mr. Tucker stepped in and he did a yeoman's

13   job.  He stepped up and he looked Mr. Vinas in the eye and he

14   tried to be straight with him.  And he said to him, look, we

15   still need you but if you want to go forward with your

16   sentence we will.  And Mr. Vinas said, okay, I'm ready to go

17   forward with the sentence.  And he said, as he will continue

18   to say here today, whenever and wherever they need me, if the

19   Court determines that I should be released some time soon, I

20   will continue to assist.  I will continue to relentlessly

21   assist the United States Attorney in this case.

22         But, please, can we get this over?  Can I stop being

23   in this facility where I'm known to simply by my initials.

24   Where I see very little other humans except my lawyers or

25   other people who are in prison because I have a chance to

1   breathe free air again.  Can I sleep on a mattress that

2   doesn't make my back hurt?  Can I enjoy some of the fruits of

3   my labors?  Can I become American again?  Can I live again the

4   American dream.

5          And I think, Judge, he's ready to do that.  He wants

6   a simple, quiet existence.  He wants simply to disappear in

7   unanimity with whatever security conditions can be arranged,

8   and I think it appropriate for your Honor to give him a

9   sentence of time served plus 90 days for those security

10  reasons.  And I would simply ask you to hear from him now and

11  we're prepared to answer any questions the Court may have.

12         THE COURT:  Anything else from you, Mr. Tucker?

13         MR. TUCKER:  No, your Honor.

14         THE COURT:  All right.  Mr. Vinas, why don't you

15  step up with counsel.

16         Mr. Vinas, I didn't receive a letter or submission

17  from you, and so, what I'd like you to do is make any

18  statement that you wish to make now if you're reading a

19  statement, please read it slowly.

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  All right.  Go ahead, sir.

22         THE DEFENDANT:  First of all, I'd like to express my

23  deepest apologies to the Court for my actions.  I understand

24  that there is no excuse that would justify what I did.  I

25  accept full responsibility.  I blame no one but myself.

17

1          To say that I'm remorseful would be an

2    understatement.  These eight and a half years of incarceration

3    have allowed me to reflect on my mistakes and to continue make

4    amends for those mistakes.

5          I would like to turn a bad thing into a good thing.

6    I had the idea of being a counterterrorism analyst years ago.

7    I tried to write to a counterterrorism contractor, but the

8    prison prevented me from making contact with the company due

9    to their rules.  I would be a valuable asset to any

10   counterterrorism team.  I'm not sure how that would work, but

11   I would see if something could be worked out.

12         One of the first things I have to take care of is

13   getting surgery on my back.  I've been dealing with back pain

14   for many years.  I know that surgical procedures today are

15   more advanced than when I first hurt my back.  I hope to fully

16   recover.  If I am unable to go into the counterterrorism

17   field, I would go into some type of construction trade to earn

18   a blue collar living.

19         THE COURT:  Thank you.

20         The Court is required to impose a sentence that is

21   sufficient, but not greater than necessary, to fulfill the

22   purposes of sentencing pursuant to Title 18, United States

23   Code, section §3553(a).

24         Having heard from the parties and from the

25   defendant, I will now address the sentencing factors that are

1    relevant to this defendant under section §3553(a) as well as

2    the substantial assistance Mr. Vinas provided to the

3    authorities.

4          First, the nature and circumstances of the offense

5    and the history and characteristics of the defendant.

6          The defendant has committed crimes of the most

7    serious nature.  At his plea proceeding, he admitted in his

8    own words that in 2007 he traveled to Pakistan with the

9    intention of meeting and joining a jihadist group to fight

10   American soldiers in Afghanistan.  He was accepted into

11   al-Qaeda and received general combat and explosives training

12   from the terrorist organization.

13         As a member of al-Qaeda, the defendant admits that

14   he participated in two rocket attacks against U.S. military

15   bases.  He also admits that he provided al-Qaeda leadership

16   with detailed information about the operation of the Long

17   Island Railroad for the purpose of assisting and planning an

18   attack against the Long Island Railroad system.

19         It is clear that at one point in time, Mr. Vinas

20   posed a grave threat to the members of the United States

21   military and this country's national security and public

22   safety of its citizens.  It is also true, however, that once

23   Mr. Vinas was arrested in Pakistan and transferred to

24   U.S. custody, he immediately commenced cooperating with

25   U.S. authorities.

19

1          In fact, the Government states in its 5K1.1 letter

2    that Mr. Vinas's assistance, "Could not have been more

3    timely," and his cooperation began, "Within days of his arrest

4    in Pakistan," and has, "Continued through the present."  A

5    span of more than eight years.

6          The Government's 5K1.1 letter provides detailed

7    information about Mr. Vinas's assistance.  While I will not

8    repeat each instance of cooperation, I will read an excerpt

9    from the Government's letter that appropriately captures the

10   scope and magnitude of Mr. Vinas has cooperation and will

11   provide some highlights of what Mr. Vinas has accomplished as

12   a cooperator.

13          The Government writes:

14          "To say that the defendant provided substantial

15   assistance to the Government is an understatement.  Indeed, he

16   may have been the single most valuable cooperating witness

17   available to the Government and law enforcement agencies with

18   respect to al-Qaeda and associated topics related to the time

19   period in which Mr. Vinas traveled to, and was operational, in

20   Afghanistan and Pakistan between 2007 and 2008.

21          During more than eight years of cooperation, Vinas

22   participated in approximately 100 interviews, reviewed

23   approximately 1,000 photographs, and contributed to the

24   opening or closing of more than 30 law enforcement

25   investigations."

1        The Court emphasizes a number of points regarding

2   Mr. Vinas's cooperation.

3        First, the Court notes the cost to Mr. Vinas of his

4   cooperation.  It is quite clear that Mr. Vinas has put himself

5   in grave danger in order to provide assistance to the

6   United States and its allies in the ongoing struggle against

7   terrorism.  Terrorist organizations like al-Qaeda have openly

8   proclaimed that they will target individuals who cooperate

9   against them.  Mr. Vinas will continue to bear this risk for

10  the rest of his life.

11       Second, the information Mr. Vinas has provided has

12  clearly been of extraordinary value.  The Government reports

13  that the information has been truthful, complete, and accurate

14  and was critical in identifying new leads and targets for

15  investigation and supplementing and correcting the

16  Government's understanding of al-Qaeda.

17       Mr. Vinas provided the FBI with critical information

18  about domestic threats by al-Qaeda in one particularly

19  noteworthy example Mr. Vinas alerted authorities about an

20  al-Qaeda attack on the Long Island Railroad that he had helped

21  plan.

22       Mr. Vinas has also helped the Government to

23  prosecute numerous individuals including Adis Medujanin who

24  was charged with conspiring and attempting to conduct

25  coordinated suicide bombings in the New York City subway

*21*

1  system.   By the Government's own account Vinas's trial

2  testimony was critical to securing the defendant's conviction.

3          Moreover, the Government has detailed Mr. Vinas's

4  substantial assistance in understanding al-Qaeda's operations,

5  organization, recruitment, and training.   Put simply,

6  Mr. Vinas's cooperation has been extraordinary, and has

7  greatly aided the U.S. and many foreign authorities.

8          The juxtaposition of Mr. Vinas's atrocious crimes

9  and his remarkable post-arrest cooperation is what makes the

10  task of sentencing Mr. Vinas so difficult.   Defense counsel

11  has aptly characterized Mr. Vinas as a complex individual.

12  Fashioning his sentence mirrors his complexity.

13          With regard to deterrence and the protection of the

14  public.

15          One of my concerns here is that the sentence I

16  impose afford adequate deterrence to criminal conduct in the

17  future.   Not just by this defendant, but by others including

18  other home grown terrorists.

19          I note that Mr. Vinas was born in Queens and grew up

20  on Long Island.

21          No one, that is no one, even Mr. Vinas himself be

22  has a crystal ball and can know for certain whether Mr. Vinas

23  will re-offend.   However, he is in control of his destiny.

24          That being said, the Government reports in its 5K1.1

25  letter that at no forked after his arrest in 2008 has

1   Mr. Vinas acted violently or expressed an interest or

2   intention to commit a violent act or otherwise support a

3   foreign terrorist organization.

4          Based on this representation and Mr. Vinas's more

5   than eight years of consistent and reliable cooperation, I am

6   cautiously optimistic that Mr. Vinas has learned the error of

7   his ways and will never again commit another crime of this

8   nature.

9          Mr. Vinas, the Government gave you an opportunity to

10  make up at least in part for your wrongdoing you have made the

11  most of that opportunity and I implore you to continue to do

12  so.  The parties point out that Mr. Vinas has served the

13  equivalent of a ten-year sentence taking into account a

14  15 percent reduction for good behavior.

15         Now, deterrence can be a double-edged sword and the

16  Court is mindful that just as sentencing should be designed to

17  deter criminal behavior, it should also avoid deterring

18  cooperation.  Again, the Court considers not only this

19  defendant, but also others who would contemplate cooperating

20  in terrorism cases.

21         The value of Mr. Vinas's cooperation is clear and

22  the Court's sentencing consideration would be incomplete if

23  they did not take into account the risk of discouraging future

24  cooperators through imposition of a sentence that does not

25  fairly reflect Mr. Vinas's contributions.

1          Finally, I have considered Mr. Vinas's need for

2    educational training, medical care, and corrective treatment.

3    Mr. Vinas has been living largely in a solitary confinement

4    situation.  Since being arrested in 2008.  He has not had

5    access to the educational or vocational training that he needs

6    to secure gainful employment in the future.  Defense counsel

7    also reports that Mr. Vinas needs back surgery.  Mr. Vinas

8    could also benefit from mental health counseling which has not

9    been available to him.

10          Mr. Vinas, do you have anything else to say?

11          THE DEFENDANT:  No, sir.

12          THE COURT:  Anything from counsel?

13          MR. TUCKER:  No, your Honor.

14          MR. ZISSOU:  No, your Honor.

15          THE COURT:  Okay.  Are you ready to be sentenced?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Based on the foregoing, and the

18    following specific reasons, I'm going to grant a downward

19    variance from the guidelines range.

20          I sentence you as follows:

21          In light of your substantial assistance and the

22    factors outlined in section §3553(a), the Court finds that the

23    following sentence is sufficient, but not greater than that

24    necessary to serve the purposes of sentencing.  I, therefore,

25    impose a sentence of time served plus 90 days.  I am, however,

*24*

1    imposing a term of lifetime supervision.

2           Your supervised release term is subject to the

3    following special conditions.

4           You shall not associate in person, through mail,

5    electronic mail, Internet, social networking, or telephone

6    with any individual with an affiliation to any terrorist

7    organization, organized crime groups, gangs, or any criminal

8    enterprise or terrorist enterprise.  Nor, shall you frequent

9    any establishment or other locale where these groups may meet

10   pursuant, but not limited to, a prohibition list that the

11   probation department will provide.

12          You shall participate in a mental health treatment

13   program as approved by the probation department.

14          You shall contribute to the cost of such services

15   rendered and any psychotropic medications prescribed to the

16   degree you are reasonably able, and shall cooperate in

17   securing any applicable any third-party payment.

18          You shall disclose all financial information and

19   documents to probation to assess your ability to pay.

20          You shall maintain full-time, verifiable employment

21   and shall participate in an educational or vocational training

22   program as approved by the probation department.

23          You shall not possess any firearm, ammunition, or

24   destructive device.

25          You shall submit your person, property, house,

*25*

1  residence, vehicle, papers, computers other electronic

2  communications or data storage devices or media or office to a

3  search conducted by the U.S. probation officer.  Failure to

4  submit to a search may be ground for revocation of release.

5       You shall warn any other occupants that the premises

6  may be subject to search pursuant to this condition.

7       An officer may conduct a search pursuant to this

8  condition only when reasonable suspicion exists that you

9  visited a condition of your supervised release that the area

10 is to be searched contain evidence of this violation.

11      Any search must be conducted at a reasonable time

12 and in a reasonable manner.  You shall continue to cooperate

13 with the Government including, but not limited to, providing

14 information and evidence to law enforcement officers and

15 prosecutors and testifying as needed before grand juries and

16 trials.

17      I decline to impose a fine as you appear to lack the

18 resources to pay a fine.

19      You are, however, required to pay a $300 special

20 assessment which is mandatory.

21      Now, should you comply with the terms of your

22 supervision for a significant length of time and exhibit

23 exceptionally good behavior while on supervised release, you

24 may have apply for an early termination of this term of

25 supervised release at some point in the future on the

1   recommendation of the Government.  There is no guarantee that

2   the Court will grant such a motion, but it is something that

3   you should keep in mind as an incentive to stay on the right

4   track.

5        You have the right to appeal your sentence to the

6   United States Court of Appeals for the Second Circuit if you

7   believe the Court has not properly follow the law in

8   sentencing you.  Your time to appeal is extremely limited of

9   the you should discuss with your attorneys immediately whether

10  an appeal would be worthwhile.

11       Do you understand your right to appeal?

12       THE DEFENDANT:  Yes, sir.

13       THE COURT:  Okay.  Is there anything else from the

14  Government?

15       Is there an underlying indictment?

16       MR. TUCKER:  Yes, your Honor.  There is an

17  underlying charge which the Government would move to dismiss

18  at this time.

19       THE COURT:  The underlying indictment is dismissed

20  on motion of the Government.

21       Anything further from the Government for today?

22       MR. TUCKER:  No, your Honor.

23       THE COURT:  Anything else from the defense?

24       MR. ZISSOU:  Judge, I just had a question about one

25  of the special conditions just a technical matter under had

*27*

1  said insofar an application for early termination of

2  supervised release, your Honor.  I'm not sure you meant to

3  say, but your Honor said than in effect the Government would

4  have to recommend such a recommendation, recommend such a

5  course of conduct.  I don't believe the statute requires that.

6  Is your Honor suggesting that what the Government's position

7  will be would carry great weight with the Court?

8          THE COURT:  Well, that's right.  That an application

9  could be paid made by counsel for the defendant on his behalf

10 or pro se, but that I would require that the Government have

11 the opportunity to make a recommendation.

12         MR. ZISSOU:  Understood.

13         THE COURT:  I would seriously consider the

14 Government's recommendation because the Government's

15 recommendation, and I would add the probation department's

16 recommendation and law enforcement's recommendation, would

17 play a very important role.

18         MR. ZISSOU:  Yes, I understand.

19         THE COURT:  It's not a but-for situation.

20         MR. ZISSOU:  Understood.

21         THE COURT:  All right.

22         MR. ZISSOU:  Nothing else to add, your Honor.

23         THE COURT:  Nothing else?  All right.

24         Mr. Vinas.

25         THE DEFENDANT:  Yes, sir.

*28*

1          THE COURT:  Good luck.

2          THE DEFENDANT:  Thank you very much, sir.

3          MR. BACHRACH:  Thank you, your Honor.

4          THE COURT:  We're adjourned.

5          MR. TUCKER:  Thank you, your Honor.

6          (Defendant exits from courtroom at 2:57 p.m.)

7          (WHEREUPON, this matter was adjourned.)

8

9                         *   *   *

10

11              <u>CERTIFICATE OF REPORTER</u>

12

I certify that the foregoing is a correct transcript of the
13  record of proceedings in the above-entitled matter.

14

15

16

17

18  _____
    Anthony D. Frisolone, FAPR, RDR, CRR, CRI
19  Official Court Reporter

20

21

22

23

24

25